# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EVELYN PARHAM,** *et al.* <br><br> **Plaintiffs,** <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 1:22-cv-02481-CKK** |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION, OR ALTERNATIVELY, TO MODIFY OR AMEND THE PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

    I.    The Court Erred in Concluding That Plaintiffs Have Identified a Protected Property Interest Under District Law. ........................................................................................ 5

    II.    The Court Erred in Finding That the Second *Mathews* Factor Weighs in Support of Plaintiffs. ................................................................................................................... 6

    III.    The Court Erred in Finding That the Clean Hands Law Is Unsupported by Any Government Interest. ................................................................................................. 10

    IV.    The Preliminary Injunction Should Be Withdrawn Based on New Factual Developments. ........................................................................................................... 11

    V.    The Court Incorrectly Treated Plaintiffs' Motion as a Facial Challenge to the Clean Hands Law Instead of an As-Applied Challenge. ..................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agomo v. Fenty*,
  916 A.2d 181 (D.C. 2007) ................................................................................................ 9

*Brown v. Trustees of Boston Univ.*,
  891 F.2d 337 (1st Cir. 1989) ......................................................................................... 4, 5

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
  630 F.3d 217 (D.C. Cir. 2011) ........................................................................................ 3

*DeVita v. District of Columbia*,
  74 A.3d 714 (D.C. 2013) ................................................................................................ 9

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  319 F. Supp. 3d 70 (D.D.C. 2018) ............................................................................. 3, 11

*Everhart v. Bowen*,
  853 F.2d 1532 (10th Cir. 1988) ...................................................................................... 4

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) ........................................................................................ 4

*Frew v. Hawkins*,
  540 U.S. 431 (2004) ........................................................................................................ 4

*Gilles v. Touchstone*,
  676 F. Supp. 341 (D.D.C. 1987) ..................................................................................... 9

*Gov't of Province of Manitoba v. Zinke*,
  849 F.3d 1111 (D.C. Cir. 2017) ................................................................................. 4, 11

*Harris v. McRae*,
  448 U.S. 297 (1980) ...................................................................................................... 11

*Horne v. Flores*,
  557 U.S. 433 (2009) ........................................................................................................ 4

*Kadrmas v. Dickinson Pub. Sch.*,
  487 U.S. 450 (1988) ...................................................................................................... 10

*Mackey*,
  443 U.S. ........................................................................................................................... 9

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) .................................................................................................... 6, 7

*Neb. HHS v. HHS*,
   435 F.3d 326 (D.C. Cir. 2006) ........................................................................................ 12

*Petties v. District of Columbia*,
   662 F.3d 564 (D.C. Cir. 2011) .......................................................................................... 4

*Pigford v. Perdue*,
   950 F.3d 886 (D.C. Cir. 2020) .......................................................................................... 4

*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992) ......................................................................................................... 4

*Shvartser v. Lekser*,
   330 F. Supp. 3d 356 (D.D.C. 2018) .................................................................................. 3

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*,
   106 F. Supp. 3d 125 (D.D.C. 2015) ................................................................................ 12

*Va. Soc'y for Human Life, Inc. v. FEC*,
   263 F.3d 379 (4th Cir. 2001) .......................................................................................... 12

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1984) ............................................................................................ 4

**Statutes**

D.C. Code § 47-2865(c) ............................................................................................................ 9

D.C. Code § 50-2302.01 ........................................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 54(b) ................................................................................. 3, 4

Federal Rule of Civil Procedure 59(e) ..................................................................................... 4

**INTRODUCTION**

Defendants seek reconsideration of the Court's December 27, 2022 Order [16], which granted Plaintiffs' motion for a preliminary injunction, because the Court's Memorandum Opinion [17] (Mem. Op.) contains several clear errors. After correcting for those errors, the Court should find that Plaintiffs have not established a likelihood of success on their procedural due process claim and should deny the motion for a preliminary injunction. Alternatively, the Court should, at a minimum, either vacate the injunction as no longer necessary or amend its scope to align with the claims asserted and relief requested in this action.

First, in concluding that Plaintiffs' procedural due process claim implicated a protected property interest, the Court found that Plaintiffs have a property interest under District law in renewing their driver's licenses. But that is *not* the property interest asserted by Plaintiffs in their motion. Plaintiffs claim a right to renew—or retain, as Plaintiffs have described it—their driver's licenses *regardless* of their compliance with the Clean Hands Law if they can show an inability to pay their debts to the District. The Court's failure to address Plaintiffs' proposed property interest is a critical omission because application of the Clean Hands Law plainly does not depend on an individual's ability to pay, and therefore, Plaintiffs have not identified a protected interest of which they have been deprived.

Second, and similarly, the Court's conclusion that the second *Mathews* factor weighs in favor of Plaintiffs ignores Plaintiffs' actual position. Plaintiffs argue that they did not receive due process, not because they did not receive opportunities to contest their tickets (they did), but because they did not receive an opportunity to avoid application of the Clean Hands Law *by showing an inability to pay their tickets*. Yet no matter how many hearings Plaintiffs receive, evidence of their inability to pay is irrelevant to application of the Clean Hands Law. Therefore, the Court wrongly concluded that an additional pre-deprivation hearing would help Plaintiffs

avoid an erroneous denial of their renewal application when Plaintiffs demand that hearing to present evidence of their inability to pay—not to challenge the basis for the debt.

Even assuming the Court's analysis of the second factor is relevant to Plaintiffs' asserted claim, the Court appears to have misread the factual record. Although the Court states that Plaintiffs have provided examples of deficient process in determining their debts to the District, the declarations submitted by Plaintiffs do not provide those examples. Plaintiffs do not allege that they failed to receive notice of their tickets or an opportunity to contest them, nor do they contend, more generally, that the District's procedures related to determining liability for traffic tickets and violations do not satisfy due process. The Court's opinion does not address how, if the process that results in a determination that Plaintiffs owe debts to the District satisfies due process, the result of that process is so inherently untrustworthy such that an additional hearing is necessary before Defendants can rely on that result when applying the Clean Hands Law.

Third, the Court's finding that the government's well-established interest in revenue collection is "unsubstantiated" when an individual claims an inability to pay effectively treats poverty as a suspect class. Because well-established Supreme Court precedent holds that poverty is not a suspect class, the Court should revisit its opinion to align its analysis with that precedent, and in so doing, find that the government interest factor of the *Mathews* test weighs in Defendants' favor.

If the Court declines to reconsider whether Plaintiffs have established a likelihood of success on their procedural due process claim, then the Court should, at a minimum, modify or amend the preliminary injunction, for two reasons. First, the relevant facts have significantly changed since the Court entered its order, mooting the need for an injunction. As explained in the declaration of Ms. Vanessa E. Newton Bernard, Associate Director of Administrative

2

Services for the D.C. Department of Motor Vehicles (DMV), DMV is no longer relying on the Clean Hands Law to deny applications for driver's licenses and has no intent to do so in the future. Second, the injunction entered by the Court exceeds the relief requested by Plaintiffs and seems to assume that Plaintiffs brought a facial challenge to the Clean Hands Law; they did not. The *only* claim brought—and, consequently, briefed on the preliminary injunction motion—related to the law's application to Plaintiffs. Because Plaintiffs did not seek relief for anyone but themselves, and because a preliminary injunction should be narrowly tailored to redress a plaintiff's alleged injury, the Court should modify the scope of the injunction. For these reasons, discussed below, the Court should grant this Motion and reconsider or amend its preliminary injunction order.

## LEGAL STANDARD

Courts in this district have reached different conclusions as to whether Rule 54(b) or Rule 59(e) governs a motion for reconsideration of an order granting preliminary injunctive relief. *See Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360–61 (D.D.C. 2018). Federal Rule of Civil Procedure 54(b) provides that any order "which adjudicates fewer than all the claims" in a case "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Under Rule 54(b), the Court has "inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). "Justice … may require reconsideration where a controlling or significant change in the facts has occurred since the submission of the issue to the court." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018) (alterations adopted) (internal quotation marks omitted); *see Rosenberg v. U.S. Dep't of Def.*, — F. Supp. 3d —, 2020 WL 1065552, at *5 (D.D.C. Mar. 5, 2020) (granting Rule 54(b) motion where new information in declarations "constitute[d] a 'change in

3

the court's awareness of the circumstances,' … which 'might reasonably be expected to alter the conclusion reached by the court'").

Similar to the inherent power to grant a Rule 54(b) motion, granting a motion under Federal Rule of Civil Procedure 59(e) is "discretionary." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Grounds for granting a Rule 59(e) motion include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020).

Finally, Rule 60(b)(5) authorizes a court to relieve a party from an injunction "where prospective application of the order is 'no longer equitable,'" if the movant shows "a significant change in … factual conditions[.]" *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–84 (1992)); *accord Petties v. District of Columbia*, 662 F.3d 564, 571 (D.C. Cir. 2011) (noting that the significant change in factual conditions inquiry should include whether the risks that led to injunctive relief have been "ameliorated, if not eliminated, as a result of changed circumstances"). Courts must take a "flexible approach" when considering motions under Rule 60(b)(5) because it "allows courts to ensure that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant." *Horne v. Flores*, 557 U.S. 433, 450 (2009) (quoting *Frew v. Hawkins*, 540 U.S. 431, 442 (2004)); *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) (citation omitted) (remanding injunction so that it is "limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." (citation omitted)); *Everhart v. Bowen*, 853 F.2d 1532, 1539 (10th Cir. 1988), rev'd on other grounds sub nom. *Sullivan v. Everhart*, 494 U.S. 83 (1990); *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) (holding injunction overbroad

insofar as it extended beyond that necessary to redress the plaintiff's injury, and explaining that "[o]rdinarily, classwide relief … is appropriate only where there is a properly certified class").

## ARGUMENT

I. **The Court Erred in Concluding That Plaintiffs Have Identified a Protected Property Interest Under District Law.**

To adequately allege a violation of their procedural due process rights, Plaintiffs must identify a property interest of which they have been deprived. *See* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. [9] (Defs.' Opp'n) at 7. Here, the Court found that that requirement had been met because "there is a viable argument that licensees have a legitimate claim of entitlement in renewal of a driver's license." Mem. Op. at 11. The Court then justified its finding by explaining that government officials lack discretion under District law when considering applications for renewal and that renewal applications are governed by objective criteria. *Id*. at 11–16.

Regardless of whether that is true, the Court's discussion has no relevance to Plaintiffs' procedural due process claim because Plaintiffs do not argue that they were deprived of their general right to renew their driver's licenses. Rather, Plaintiffs argue that they should be permitted to renew their driver's licenses if they can show an inability to pay their debts. *See* Pls.' Mem. of P. and A. in Supp. of Pls.' Mot. for Prelim. Inj. [4-1] (Pls.' Mem.) at 29. In other words, Plaintiffs do not argue that they were prevented from renewing their driver's licenses even though they satisfied the objective criteria for renewal; Plaintiffs argue that they should have been permitted to renew their licenses even though they admittedly *do not* meet the objective criteria for renewal (because of their debts). *See id*. (arguing that their rights were violated because they were deprived of the "opportunity to present evidence that they are unable to satisfy their debt to the District"). Therefore, the property right identified by the Court has no

5

connection to the purported property right relied on by Plaintiffs in their procedural due process claim.

Accordingly, the Court should reconsider its opinion and analyze whether Plaintiffs have a property right under District law to renew their driver's licenses if they can show an inability to pay their debts despite the plain language of the Clean Hands Law. And, because District law clearly does not excuse compliance with the Clean Hands Law based on an inability to pay, the Court should find that Plaintiffs' asserted property right does exist under District law and cannot support a procedural due process claim.

## II.     The Court Erred in Finding That the Second *Mathews* Factor Weighs in Support of Plaintiffs.

Having concluded that Plaintiffs identified a protected property interest under District law of which they were deprived, the Court proceeded to consider whether Plaintiffs received due process under the familiar three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluded that the second factor—risk of erroneous deprivation and value of additional safeguards—weighed in favor of Plaintiffs. Mem. Op. at 18–19. That conclusion suffers from two flaws. First, the Court again based its analysis on a claim not asserted by Plaintiffs. Second, even assuming the Court did address Plaintiffs' claim, the Court appears to have misread the factual record.

In arguing that the second *Mathews* factor weighs in their favor, Plaintiffs did not contend—because they could not plausibly, *see infra*—that they were deprived of an opportunity to contest their tickets. Rather, they contend that they were deprived of an opportunity to demonstrate their inability to pay those tickets: "With no inquiry into ability to pay, Plaintiffs are barred from showing that their failure to pay is not willful but instead the result of their financial instability." Pls.' Mem. at 32. The solution, according to Plaintiffs, would be "[a] pre-

6

deprivation hearing, *focused on ability to pay*." *Id*. at 33 (emphasis added); *id*. (arguing they should be able "to show they lack the ability to pay their government debt before taking away their licenses"). But no amount of process *focused on ability to pay* could result in a different outcome for Plaintiffs—or anyone without outstanding debt seeking the renewal of a driver's license—because inability to pay is not an exception to disqualification on clean-hands grounds.

As above, the Court, in its preliminary injunction opinion, ignored Plaintiffs' demand for a hearing at which they could avoid application of the Clean Hands Law based on an inability to pay their debts and instead focused on the risk of erroneous deprivations due to errors in the attribution or calculation of the underlying debts. That was error.

But even giving Plaintiffs benefit of the doubt—assuming a legal claim they did not actually plead—the Court's conclusion that additional safeguards are necessary "to ensur[e] that D.C. residents are not erroneously stripped of their licenses," was misplaced. *See* Mem. Op. at 19. In support, the Court observed that Plaintiffs have "provided illustrations of such error," that is, error in the attribution of calculation of the debts resulting in denial of their renewal applications. *Id*. But the Court's statement appears to be based on a misreading of Plaintiffs' declarations, as illustrated immediately below.

*Plaintiff Nichole Jones*. Ms. Jones acknowledges receiving notice of her tickets, does not allege that the tickets were issued in error, and does not allege that she failed to receive an opportunity to contest her tickets. Pls.' Mem., Ex. E [4-6] ¶ 6. While Ms. Jones does claim that her license was suspended without prior notice, *id*., even if true, that has nothing to do with whether the District's application of the Clean Hands Law to Ms. Jones was erroneous—it was not.

7

*Plaintiff Evelyn Parham*.  Ms. Parham acknowledges receiving notice of her tickets and does not allege that any of the tickets were issued in error (in the sense that her vehicle was not in violation of the applicable regulations).  Pls.' Mem., Ex. D [4-5] ¶ 7.  While Ms. Parham does allege that her car was ticketed several times after she was told by various government employees that it would not be ticketed, she also acknowledges that she had an opportunity to contest those tickets.  *Id*.

*Plaintiff Victor Hall*.  Mr. Hall acknowledges receiving notice of his tickets, does not allege that the tickets were issued in error, and does not allege that he failed to receive an opportunity to contest his tickets.  Pls.' Mem., Ex. H [4-9] ¶ 3.

*Plaintiff Dominique Roberts*.  Ms. Jones acknowledges receiving notice of her tickets, does not allege that the tickets were issued in error, and does not allege that she failed to receive an opportunity to contest her tickets.  Pls.' Mem., Ex. G [4-8] ¶ 3.

*Plaintiff Carlotta Mitchell*.  Ms. Mitchell acknowledges receiving notice of her tickets, does not allege that the tickets were issued in error (but does dispute a towing fee), and does not allege that she failed to receive an opportunity to contest her tickets.  Pls.' Mem., Ex. F [4-7] ¶ 5.[1]

Thus, consistent with District law, each Plaintiff had an opportunity, via existing procedural safeguards, to contest both liability for the violations and the resulting fines at the time of their underlying traffic violations.  *See* D.C. Code § 50-2302.01, *et seq*. (Moving

---

[1]  The Court also cited the declaration of Anthony Jones, who is not a plaintiff in this litigation.  Mem. Op. at 19 (citing Pls.' Mem. Ex. C [4-4] ¶¶ 4–8).  However, not only is Mr. Jones not a party, but his allegations do not concern his inability to obtain a driver's license.  Pls.' Mem., Ex. C ¶¶ 4–8.  Mr. Jones faced alleged difficulties registering a vehicle and based on his subsequent interactions with the DMV was permitted to register the vehicle.  *Id*.

Infractions); *id*. § 50-2303.01, *et seq*. (Parking, Standing, Stopping and Pedestrian Infractions). And *those* safeguards, which Plaintiffs here do not challenge, have been found to comport with due process. *See Agomo v. Fenty*, 916 A.2d 181, 193 (D.C. 2007) (finding liability provisions of Traffic Adjudication Act satisfy due process); *DeVita v. District of Columbia*, 74 A.3d 714, 717 (D.C. 2013) (holding administrative procedures provided for violations of Automated Traffic Enforcement System satisfy due process). In other words, Plaintiffs had notice of and the opportunity to contest the amounts of their debts prior to applying for their renewals, whether or not they availed themselves of those remedies. *Cf. Gilles v. Touchstone*, 676 F. Supp. 341, 345 (D.D.C. 1987) ("[f]ailure to exercise available adequate state remedies does not entitle [them] to compensation for due process violations.").

Given that the underlying process for assessing fees and fines provides an adequate opportunity to dispute any violation, and thus "provide[s] a reasonably reliable basis for concluding that" Plaintiffs owed the fines that prevented them from renewing their licenses, the "prompt postdeprivation review [ ] available for correction of administrative error" is sufficient to satisfy due process. *See* Mem. Op. at 19 (quoting *Mackey*, 443 U.S. at 13). And *that* available process is just the first layer. In addition, Plaintiffs had the opportunity to request a hearing to challenge the basis of the denial of their applications under the Clean Hands Law. *See* D.C. Code § 47-2865(c). It does not appear from the record that any Plaintiff availed himself of the opportunity for such a hearing, but it was available to them if they believed that any fine assessed was in error.

In sum, given that the Court's analysis of the risk of erroneous deprivations has no connection to the risks that Plaintiffs are seeking to mitigate, *i.e.*, application of the Clean Hands Law without considering ability to pay, the Court should reconsider its analysis of the second

*Mathews* factor. In so doing, the Court should find that providing Plaintiffs with a pre-deprivation hearing at which they would attempt to demonstrate their inability to pay their debts would be pointless because inability to pay is irrelevant to application of the Clean Hands Law. Even if the Court keeps its focus on a claim Plaintiffs did not plead, it should reconsider and hold that the existing mechanisms for contesting traffic violations and fines "provide[s] a reasonably reliable basis for concluding that" Plaintiffs owed the fines that prevented them from renewing their licenses. Mem. Op. at 19 (quotations omitted).

### III. The Court Erred in Finding That the Clean Hands Law Is Unsupported by Any Government Interest.

With regard to the third *Mathews* factor, the Court concluded that the government's interest in revenue collection was "unsubstantiated" because "Plaintiffs claim an inability to pay the fines and fees assessed." Mem. Op. at 21. But it is unclear what legal standard the Court was applying to reach that conclusion. As Defendants explained in their opposition, it is well-established that the government has an interest in revenue collection. *See* Defs.' Opp'n at 12. And it cannot be reasonably disputed that the Clean Hands Law aids in revenue collection with regard to a significant portion of the District's population—indeed, the fact that complying with the Clean Hands Law is not an issue for many District residents is argued by Plaintiffs. *See* Pls.' Mem. at 1. However, the Court's opinion does not address why the government's interest in enforcing a law turns on individual circumstances.

Given that the only alleged commonality between Plaintiffs is their inability to pay their debts to the District, it thus appears that the Court is treating poverty as a suspect class. But, as explained in Defendants' opposition, the Supreme Court has repeatedly held that poverty is not to be so treated. *See Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) ("We have previously rejected the suggestion that statutes having different effects on the wealthy and the

10

poor should on that account alone be subjected to strict equal protection scrutiny."); *Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[T]his Court has repeatedly held that poverty, standing alone is not a suspect classification.").

Because the Court's opinion does not address why the government's interest in revenue collection does not apply solely because of Plaintiffs' financial situation, and because poverty is not a suspect class, the Court should revisit its opinion to clarify that the government's interest in revenue collection applies here. If the government's interest in revenue collection does not apply anytime an individual claims an inability to pay a fee, then countless processing and servicing fees charged by governments would run the risk of violating an individual's due process unless they included an exception based on ability to pay.

## IV. The Preliminary Injunction Should Be Withdrawn Based on New Factual Developments.

If the Court does not vacate the preliminary injunction based on its reconsideration of its underlying analysis, then the Court should withdraw the injunction because it is no longer necessary to effectuate the relief Plaintiffs seek. As explained in the declaration of Ms. Vanessa E. Newton Bernard, Associate Director of Administrative Services for the D.C. Department of Motor Vehicles, as of January 24, 2023, DMV is no longer relying on the Clean Hands Law to deny applications for driver's licenses and has no intent of enforcing it in the future. Declaration of Vanessa Bernard ¶¶ 6–11 (January 24, 2023) (attached as Ex. A). In fact, Plaintiffs Parham and Hall have already successfully applied for driver's licenses, and Mr. Hall has been issued a license. *Id.* ¶ 12. Continuing to enjoin the District is therefore no longer necessary, would not serve the ends of justice, *Dunlap*, 319 F. Supp. 3d at 81, and would be "no longer equitable" under the circumstances, *Zinke*, 849 F.3d at 1117.

**V.      The Court Incorrectly Treated Plaintiffs' Motion as a Facial Challenge to the Clean Hands Law Instead of an As-Applied Challenge.**

If the Court does not withdraw the preliminary injunction, then, at a minimum, the Court should modify the preliminary injunction to apply only to Plaintiffs. It is axiomatic that "an injunction must be narrowly tailored to remedy the specific harm shown." *Neb. HHS v. HHS*, 435 F.3d 326, 330 (D.C. Cir. 2006) (internal quotations omitted) (citing *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) for the proposition that "district court should not have enjoined agency from applying challenged regulation to any party when 'an injunction covering [plaintiff] alone adequately protects it from the feared prosecution'"). And this "need for narrow tailoring … is particularly important in the context of a preliminary injunction … where the court has yet finally to resolve the merits of the dispute." *U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125, 126 (D.D.C. 2015). In Plaintiffs' Complaint and motion for a preliminary injunction, the only relief they seek pertains to their own driver's license applications. Compl. [1-2] ¶ 7; *id*. at 30 (Prayer for Relief); Pls.' Mem. at 1; Prelim. Inj. Proposed Order [4-11] at 2. Yet the Court has enjoined Defendants from applying the Clean Hands Law to anyone, including millionaires. Order at 1. The Court should align the scope of the preliminary injunction with the relief requested by Plaintiffs.

Further, it would be inherently unfair to enjoin Defendants from enforcing the Clean Hands Law against anyone given the Court's analysis of the third *Mathews* factor. As explained above, the Court found that the District has no interest in enforcing the Clean Hands Law against those with an inability to pay, treating those with an ability to pay differently from those with an inability to pay. Mem. Op. at 20–21. But, in issuing relief, the Court ignored the distinction, issuing the same relief to everyone, regardless of financial means. The Court should reconcile that inconsistency and modify the preliminary injunction to apply only to Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and reconsider or amend its preliminary injunction order.

Date: January 24, 2023.                                     Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Interim Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Richard Sobiecki*
RICHARD P. SOBIECKI [500163]
HONEY MORTON [1019878]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7512
Email: richard.sobiecki@dc.gov

*Counsel for Defendants*